TAYLOR BROS. ET AL. V. D. S. HEARN ET UX.

Decided December 14, 1910.

1.—Pleading—False Imprisonment—Malicious Prosecution.

Pleading in a suit for damages considered, and held to state a cause of action for false imprisonment, but not for malicious prosecution.

2.—Reforming Judgment—Practice.

When the several items of damage sued for are found separately by the jury and so stated in the verdict, the judgment may be corrected or reformed when necessary by striking out any one of the items and leaving the others.

3.—False Imprisonment—Telegram.

Any unlawful detention of a person constitutes false imprisonment. A telegram is not a lawful warrant of arrest, and the taking of a person into custody by virtue of the same is illegal.

4.—Same.

One who prepares a telegram, causes a peace officer to sign it, and causes it to be transmitted by the telegraph company, is responsible for an unlawful arrest made by virtue of the same, although it is signed by the officer. Both the telegram and the answer thereto are competent evidence against the party causing it to be sent.

5.—Same—Pleading—Charge.

Where damages are claimed for false imprisonment of the wife alone, it is error for the court to refuse a special charge limiting the jury to a con-

sideration of the damages suffered by her, although the husband was illegally imprisoned at the same time and joins in the suit for said damages.

**6.—Same—Advice of Counsel.**

That a party guilty of false imprisonment acted under the advice of counsel in causing the arrest may be shown and considered by the jury in determining the question of malice and in mitigation of exemplary damages.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*C. H. C. Amerman, John M. Duncan,* and *Spotts & Matthews,* for appellants.

*Brockman, Kahn & Williams,* for appellees.

JAMES, CHIEF JUSTICE.—According to the charge in this case, it was submitted to the jury as one for malicious prosecution and false imprisonment on behalf of appellees against the members of the firm of Taylor Bros. and Ben F. Harless.

As we understand the amended petition, it does not state a case of malicious prosecution, nor does it declare for damages arising from malicious prosecution. It alleged that Mrs. Hearn owed appellants for jewelry bought of them in Houston, and that on April 9, 1907, they moved from Houston to Memphis; that as they alighted from the train at Memphis they were taken in custody by officers in pursuance of the following telegram from the chief of police of Houston:

"Houston, Apr. 10-07.

"Geo. T. O'Haver, Chief of Police, Memphis, Tenn.:

"I hold warrant for B. S. Hearn and Leona Hearn for felony theft. Hearn about five feet ten clean shaved, weight about 137, looks like a Jew. Wife red complexion, sunburn hair, weight about 180 lbs., has two children, girl about 10 years old very fleshy, boy fifteen years old, search, and hold all diamonds. They left Houston on I. & G. N. train 9th 3.30 p. m.

"George Ellis, Chief of Police."

That the accusation against them contained in said telegram was maliciously false and untrue, and said telegram was wantonly and maliciously by defendants procured to be sent, and plaintiffs to be so arrested and incarcerated, and all without probable cause or any justification or excuse whatever. That neither of the plaintiffs was in any way guilty of the charge contained in said telegram, and the said arrest of plaintiffs was widely published in the newspapers of both Houston and Galveston, Texas, and wide circulation given to the fact that plaintiffs had been arrested in Memphis on a charge of felony theft, which allegations defendants knew to be false and unfounded and to be without probable cause; and the incarceration of plaintiff Leona M. Hearn in the presence of her two young children, and the necessity of the

children remaining with her in the jail at Memphis, caused plaintiff the greatest physical suffering, mental anguish, mortification of spirit, shame and humiliation, and was calculated to and did injure plaintiff in the eyes of the public, etc. .

That by reason of said acts of the defendants in so procuring the unlawful and unwarrantable arrest of plaintiffs, they were unlawfully and maliciously deprived of their liberty . . . and held out as common felons and thieves, and were compelled to endure the humiliation, shame and mortification of being looked upon in said city of strangers as thieves and felons, and to endure the humiliation, mortification and disgrace of said incarceration and the physical discomforts entailed thereby, all of which was the proximate result of the malicious, wilful and wrongful acts of the defendants in making said false accusation and in procuring the said telegram to be sent and in procuring the arrest of plaintiffs, she has been actually damaged in the sum of $25,000.

That by reason of the malice and wilfulness of defendants toward plaintiff Leona M. Hearn, and in the charging of said plaintiff with the crime of felony theft, and by reason of her arrest and incarceration, etc., having been the direct and proximate result of the malice and wilfulness of defendants toward plaintiff, and by reason of her being held out to the contumely and reproach of the public, and by reason of her being branded and published to the world as a felon and thief, all of which was done and procured through the malice of defendants towards said plaintiff, she has been damaged in the sum of $50,000, as exemplary damages.

That by reason of the illegal arrest, detention and incarceration of the plaintiffs they were compelled to employ attorneys to bring a habeas corpus proceeding for their release, and had to expend in that behalf the sum of one hundred dollars.

Wherefore they prayed for the actual and exemplary damages to plaintiff Leona M. Hearn.

It will be seen from the above that plaintiffs do not allege the warrant held by the Houston chief of police, nor any affidavit or proceeding from which any such warrant issued, nor, except by inference from the telegram, is any proceeding made known. Nor is there any allegation that the proceeding, if any, has ever terminated favorably to plaintiffs, or otherwise. The cause of action is based upon the telegram, which it is alleged was sent at the instigation and by the procurement of defendants, charging that the chief of police of Houston held a warrant against them for felony theft, which led to the arrest and imprisonment of plaintiff, and to the consequences alleged. In our opinion the petition does not state a case for damages for malicious prosecution, but for false imprisonment. This being so, we need not consider nor discuss the assignments of error which deal alone with the law relating to malicious prosecution.

The court submitted to the jury for their findings a case of malicious prosecution and a case of false imprisonment separately, instructing them peremptorily to find for plaintiffs on the issue of false imprison-

ment; and they were told that in reference to actual damages to include any amount they found plaintiff had to pay out as attorney's fees. They were instructed to find the damages for malicious prosecution and for false imprisonment separately.

The verdict returned was as follows: "We the jury find for the plaintiffs actual damages $100, false imprisonment $2500, and exemplary damages $2900."

It is manifest that the finding for $100 actual damages was for attorney's fees. It being conceded that the statement of facts shows no testimony supporting this finding, that part of the judgment might be corrected by striking it out, as plaintiff consents to do.

It is equally manifest that the jury found no damages for malicious prosecution. This under the pleading was correct; besides, being in favor of appellants, it is not subject to complaint from them. It was practically a finding for appellants on that issue.

The assignments of error which deal with the false imprisonment feature of the case will now be considered.

The twenty-sixth assignment is that the court erred in this instruction: "As to the issue of false imprisonment, you are instructed as a matter of law that the arrest of the plaintiff Leona M. Hearn, under the circumstances shown in proof in this case, was illegal, and therefore you will find for plaintiffs upon that issue, and assess their damages as hereinafter instructed."

There can be no serious question that the taking of Mrs. Hearn in custody by virtue of the telegram was illegal. It was not a lawful warrant for the arrest. It was admittedly prepared, and caused to be signed by the chief of police of Houston, and sent by the defendants. It was their telegram. It is true that it did not in terms say "arrest" the parties. But plaintiffs and their belongings could not be held and searched without their being detained, and any detention constituted imprisonment. Besides, it appears from all the testimony adduced on the subject that the detention for the purposes of search continued and was not completed until they were discharged the next day on habeas corpus. Besides this, defendants' testimony showed that the object of the telegram was to cause their arrest. There was no error in giving the peremptory instruction.

In the same connection appellants complain that the use of the words, "as hereinafter instructed," was erroneous in this, that in the subsequent paragraph "6" the jury were instructed to find on this issue all damages which Mrs. Hearn may have suffered both by false imprisonment and malicious prosecution. Paragraph "6" refers to the two issues separately, and we think that in view of the whole charge, the jury could not have been misled into any such understanding.

The forty-fourth assignment of error is as follows: "The court refused to give this requested instruction: 'You are further charged, as a part of the law of this case, that you will not consider any affidavit made by the defendant against plaintiff D. S. Hearn; nor his arrest, if any; nor any damage, if any, suffered by him in connection with such

arrest or imprisonment; nor any question as to the guilt or innocence of the said D. S. Hearn of the charge or charges made in the affidavits in evidence in this suit.' "

We think defendants were entitled to this charge. The petition expressly declared that damages were claimed only in respect to Mrs. Hearn. In paragraph "6," which relates to actual damages, the court expressly limited the finding to damages sustained by her. But paragraph "No. 7," relating to exemplary damages, does not do so, but authorizes such damages in favor of plaintiffs. Under these circumstances the charge ought to have been given.

Under the first assignment appellants claim that it was error to admit in evidence the telegraphic reply of O'Haver directed to Ellis, the chief of police at Houston, which was: "Ans. by saying that B. S. Hearn and Leona Hearn arrested. Say diamonds are in iron safe shipped with H. H. goods, send officer at once. Claims diamonds was bought on installment." Inasmuch as the evidence clearly shows that the original telegram was prepared and procured by defendants to be sent by Ellis, the reply was really to them and was admissible. However, no error could be predicated on this for the reason that everything the reply evidences was otherwise shown by undisputed testimony.

The fourth and fifth assignments complain of defendants not being allowed to show by plaintiff Mrs. Hearn that when she left Houston she was in debt to other persons than these defendants; appellants basing their claim to the admissibility of such testimony upon the fact that the petition alleged, evidently by way of aggravation of her damages, "that she had never beaten anybody out of anything that she had ever owed." It appears, from what she testified to, that she did not deny owing others. She testified on cross-examination: "I have never beaten anybody out of anything that I owed. I never beat anybody that I didn't pay; I tried to pay the best I could." The question, we find, was, in effect, answered.

The question of advice of counsel, so far as it is involved in this record, has reference solely to the supposed issue of malicious prosecution. It was not claimed that there was any advice of counsel taken in the matter of the sending of the telegram. If such had been the case it would have been proper for the jury to consider it on the question of malice in connection with and mitigation of exemplary damages. The charge on advice of counsel which the court gave is in accord with the decisions on that subject.

In view of a reversal, it is not necessary for us to discuss the assignments which refer to alleged errors in the manner in which the verdict was arrived at and returned. Reversed and remanded.

*Reversed and remanded.*